IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **BRANCH BANKING AND TRUST COMPANY,** successor in interest to COLONIAL BANK, by asset acquisition from the FDIC, as Receiver for Colonial Bank, | )<br>)<br>)<br>)<br>) |
| **Plaintiff,** | )<br>) |
| v. | ) CIVIL ACTION NO. 15-00398-KD-N |
| **MACLAY CONSTRUCTION, INC.** and **CHARLES A. MACLAY,** | )<br>)<br>)<br>) |
| **Defendants.** | ) |

## ORDER

This action is before the Court on plaintiff Branch Banking and Trust Company's (BBT) motion for summary judgment, brief, and evidentiary material in support. (Docs. 20, 21)[1] Upon consideration, and for the reasons set forth herein, BBT's motion is **GRANTED**.

**I.    Factual Background**

Defendants Maclay and Maclay Construction did not respond to the motion for summary judgment. Therefore, they did not dispute BBT's statement of undisputed facts. Accordingly, the "Court will deem uncontroverted material facts to be admitted solely for the purpose of deciding the motion for summary judgment." S. D. Ala. CivLR 56(d).

---

[1] BBT frequently cites Attachment 1 to Exhibit A (doc. 21-1) as the source of true and correct copies of the notes, guarantees, mortgages, assignments, allonges, and other documents. However, BBT did not provide the Court with page numbers. Attachment 1 consists of forty-eight pages.

[2] Note 1 was the last of a series of notes that were executed in favor of Colonial Bank and renewed at various times between July 24, 2006 and August 13, 2008. (Doc. 21-1, p. 3, ¶ 4)

[3] In the motion for summary judgment, BBT alleges that Maclay executed and delivered to Colonial on August 13, 2008, a personal Guarantee whereby he guaranteed all debts owed to Colonial under Note 1. (Doc. 21, p. 6)  The Court was unable to locate a Guarantee signed on August 13, 2008 in Attachment 1 to Exhibit A, Ufen's Affidavit.  Also, Ufen made a sworn

**A. Note 1, Mortgage, and Guarantee**

On August 13, 2008, Defendant Maclay Construction, Inc. executed and delivered to Colonial Bank a Commercial Promissory Note and Security Agreement (Note 1)[2] in the principal amount of $250,000.00. (Doc. 1 at ¶ 6; Doc. 9, Defendants' Answer, at ¶ 6; Doc. 21-1, p. 16, Attachment 1 to Exhibit A, Affidavit of BBT Vice President Marya Ufen). Under the terms of Note 1, Maclay Construction agreed to make payments when due and "[i]f legal proceedings are instituted to enforce the terms of this Note," Maclay Construction agreed "to pay all costs of [Colonial Bank] in connection therewith, including reasonable attorney fees." (*Id.*)

Note 1 was secured by a Real Estate Mortgage executed by Maclay Construction, dated July 24, 2006, and re-recorded on March 6, 2009, in Mortgage Book 6502, Page 1226, in the Office of the Judge of Probate of Mobile County, Alabama. (Doc. 21-1, p. 4, Ufen Affidavit, ¶ 6; Doc. 21-1, p. 30-37)

Maclay Construction defaulted under the terms of Note 1 by failing to pay the full amount owed on the maturity date of August 11, 2009. (Doc. 21-1, p. 6, Ufen Affidavit, ¶ 13) By reason of the default, BBT became entitled to foreclose on the real property described in the Mortgage. The property securing Note 1 was sold at foreclosure sale on April 21, 2010, to BBT, the highest bidder, in the amount of $50,050.00. (Doc. 21-1, p. 6, Ufen Affidavit, ¶ 14)

At time of foreclosure, BBT was due $267,678.46 under Note 1. BBT credited the sale bid amount of $50,050.00 to the outstanding debt. After credit, BBT is owed $ 217,628.46 under Note 1 as of February 9, 2016 (excluding attorney fees, costs, and expenses). BBT is not seeking additional interest accrued since that time on the Note. (Doc. 21-1, p. 6, Ufen Affidavit, ¶ 17)

---

[2] Note 1 was the last of a series of notes that were executed in favor of Colonial Bank and renewed at various times between July 24, 2006 and August 13, 2008. (Doc. 21-1, p. 3, ¶ 4)

2

Previously on December 13, 2006, Maclay executed a Guarantee[3] whereby he guaranteed all debts then owing to Colonial Bank by Maclay Construction, or any debts thereafter owed to Colonial Bank. (Doc. 21-1, p. 4, Ufen Affidavit, ¶ 8)  Under the terms of the "continuing Guarantee", Maclay guaranteed payment of all debts "of every kind and description, whether now owing or hereinafter arising out of credit previously, contemporaneously, or hereinafter granted" by Colonial Bank to Maclay Construction. (Doc. 21-1, p. 27) Maclay waived "all notices hereunder, demand, presentation and any and all notices of protest, default, or nonpayment." (*Id*.)   Maclay also agreed to pay all of Colonial's "costs incurred to enforce this Guarantee, including reasonable attorney fees." (*Id*.)

### B. Note 2, Mortgage, and Guarantee

On October 23, 2008, Maclay Construction executed and delivered to Colonial a Commercial Promissory Note and Security Agreement ("Note 2") in the principal amount of $146,000.00. (Doc. 1 at ¶ 21; Doc. 9, Defendants' Answer, at ¶ 21; Doc. 21-1, p. 18-19, Attachment 1 to Exhibit A, Ufen Affidavit).  Under the terms of Note 2, Maclay Construction agreed to make payments when due and "[i]f legal proceedings are instituted to enforce the terms of this Note," Maclay Construction agreed "to pay all costs of [Colonial Bank] in connection therewith, including reasonable attorney fees." (*Id*.)

Note 2 was secured by a Real Estate Mortgage executed by Maclay Construction, dated December 13, 2006, and recorded on December 14, 2006, in Mortgage Book 6096, Page 1714 in the Office of the Judge of Probate of Mobile County, Alabama. (Doc. 21-1, p. 4, Ufen Affidavit,

---

[3] In the motion for summary judgment, BBT alleges that Maclay executed and delivered to Colonial on August 13, 2008, a personal Guarantee whereby he guaranteed all debts owed to Colonial under Note 1. (Doc. 21, p. 6)  The Court was unable to locate a Guarantee signed on August 13, 2008 in Attachment 1 to Exhibit A, Ufen's Affidavit.  Also, Ufen made a sworn statement that the Guarantee was executed December 13, 2006. (Doc. 21-1, p. 4, ¶ 8)

¶ 7; Doc. 21-1, p. 38- 42)

Maclay Construction defaulted under the terms of Note 2 by failing to pay the full amounts owed on the maturity date of October 22, 2009. (Doc. 21-1, p. 6, Ufen Affidavit, ¶ 13) By reason of the default, BBT became entitled to foreclose on the real property described in the Mortgage. The property securing the loans was sold at the foreclosure sale on April 22, 2010, to the highest bidder, in the amount of $135,590.00. (Doc. 21-1, p. 6, Ufen Affidavit, ¶ 14)

At time of foreclosure, BBT was owed $153,772.70 for Note 2 and applied the sale bid amount of $135,590.00 to the outstanding balance. After giving credit for the foreclosure sale bid amount, BBT is owed $18,182.70 under Note 2 as of February 9, 2016 (excluding attorney fees, costs, and expenses).  BBT is not seeking additional interest that has accrued since that time.  (Doc. 21-1, p. 6, Ufen Affidavit, ¶ 17)

Also, on October 23, 2008, Maclay executed a Guarantee whereby he guaranteed all debts then owing to Colonial Bank by Maclay Construction, or any debts thereafter owed to Colonial Bank. (Doc. 21-1, p. 4-5, Ufen Affidavit, ¶ 9)  Under the terms of the "continuing Guarantee," Maclay guaranteed payment of all debts "of every kind and description, whether now owing or hereinafter arising out of credit previously, contemporaneously, or hereinafter granted" by Colonial Bank to Maclay Construction. (Doc. 21-1, p. 29)  Maclay waived "all notices hereunder, demand, presentation and any and all notices of protest, default, or nonpayment." (*Id.*)   Maclay also agreed to pay all of Colonial's "costs incurred to enforce this Guarantee, including reasonable attorney fees." (*Id.*.)

**C. The Federal Deposit Insurance Corporation's assignment to BBT**

Initially, Colonial Bank owned and held the promissory notes and guarantee agreements. On August 14, 2009, Colonial Bank was closed by the Alabama State Banking Department and

the Federal Deposit Insurance Corporation was appointed Receiver. (Doc. 21-1, p. 52-58) BB&T purchased substantially all of the assets of Colonial Bank from the FDIC, including the Notes and Guarantees at issue.

BBT now owns and holds Note 1 and Note 2, all modifications and renewals, and the associated loan documents, including Maclay's Guarantees, by way of the Purchase and Assumption Agreement with the FDIC (*see* http:www.fdic.gov/bank/individual/failed/colonial-al_P_and_A.pdf), the Assignment of Security Instruments and Other Loan Documents, recorded in Book 6642, Page 1636, in the Office of the Judge of Probate of Mobile County, Alabama, (doc. 21-1, p. 50-51), and by virtue of the Allonges to Note 1 and Note 2. (Doc. 21-1, p. 11, 17).

## II.     Standard of Review

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Rule 56(c) governs procedures and provides as follows:

> (1) *Supporting Factual Positions.* A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
>> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>>
>> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.
>
> (2) *Objection That a Fact Is Not Supported by Admissible Evidence.* A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence.
>
> (3) *Materials Not Cited.* The court need consider only the cited materials, but it may consider other materials in the record.

> (4) *Affidavits or Declarations.* An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.

Fed. R. Civ. P. 56(c).

BBT, as the party seeking summary judgment, bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). If the BBT as the moving party "fails to discharge the initial burden, then the motion must be denied and the court need not consider what, if any, showing the non-movant [Maclay and Maclay Construction] has made." *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993); Clark, 929 F.2d at 608.

If BBT carries its initial summary judgment burden, the responsibility shifts to Maclay and Maclay Construction "to show the existence of a genuine issue of material fact." *Fitzpatrick v. City of Atlanta*, 2 F.3d at 1115. If they fail to make a sufficient showing on an essential element of their case with respect to which they have the burden of proof, then BBT, the moving party, is entitled to summary judgment. *Celotex*, 477 U.S. at 323. In deciding whether the non-moving parties Maclay and Maclay Construction have met their burden, the evidence of the non-movant is to be believed and all justifiable inferences drawn in their favor. *Tipton v. Bergrohr GMBH-Siegen*, 965 F.2d 994, 998-99 (11th Cir. 1992) (internal citations and quotations omitted); *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003) (On motion for summary judgment, "[t]he evidence, and all reasonable inferences, must be viewed in the light most favorable to the nonmovant....")

**III.    Analysis**

    **A.    Governing Law**

"[A] federal court in a diversity case is required to apply the laws, including principles of conflict of laws, of the state in which the federal court sits." *Manuel v. Convergys Corp.*, 430 F.3d 1132, 1139 (11th Cir. 2005) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941)). Therefore, the Court must decide which state's law governs this breach of contract action between defendants Maclay and Maclay Construction, citizens of Alabama, and BBT, a citizen of North Carolina. In Alabama, the courts follow the traditional conflict-of-law principles of *lex loci contractus*. *Lifestar Response of Ala., Inc. v. Admiral Ins. Co.*, 17 So. 3d 200, 213 (Ala. 2009). Accordingly, contract claims are governed by the laws of the state where the contract was made, unless the contracting parties chose a particular state's law to govern their agreement, *Cherry, Bekaert & Holland v. Brown*, 582 So. 2d 502, 506 (Ala. 1991).

Notes 1 and 2 were executed and delivered to Colonial Bank, BBT's predecessor, in Mobile, Alabama. Each Note states that "[t]his Agreement has been delivered in the state where the Lender is located and shall be construed in accordance with the laws of that State" Thus, the Notes are governed by the laws of Alabama.

The Guarantees do not contain any statement regarding the applicable law. However, both show Colonial Bank as the Lender with its location as Mobile, Alabama and that the borrower Maclay Construction is located in Mobile, Alabama. Since the Guarantees were made in Alabama, and the contracting parties did not chose otherwise, Alabama law controls the Guarantees.

    **B. Breach of Contract for Note 1 and 2**

"A promissory note is a form of contract; therefore, it must be construed under general

contract principles." *Merchants Bank v. Head*, 161 So.3d 1151, 1154 (Ala. 2014) (citing *Bockman v. WCH, L.L.C.*, 943 So.2d 789, 795 (Ala. 2006) (quoting *Dawkins v. Walker*, 794 So.2d 333, 339 (Ala. 2001), quoting in turn *Ex parte Dan Tucker Auto Sales, Inc.*, 718 So.2d 33, 35–36 (Ala.1998)). "The elements of a breach-of-contract claim under Alabama law are (1) a valid contract binding the parties; (2) the plaintiff's performance under the contract; (3) the defendant's nonperformance; and (4) resulting damages." *Shaffer v. Regions Financial Corp.*, 29 So.3d 872, 880 (Ala.2009) (internal quotes omitted).

On motion for summary judgment, BBT argues that it has established a *prima facie* case for enforcement of the Notes. BBT argues that it has produced the Notes and shown that they were executed and that it has provided affidavit testimony as to the amounts due and Maclay Construction's failure to make the required payments. BBT also argues that Maclay Construction has not established any valid defense to the debt and has not presented any evidence to dispute the amount of the debt. Defendant Maclay Construction did not respond to the motion for summary judgment.

The uncontroverted evidence shows that a contract existed between BBT and Maclay Construction, *i.e.*, the Notes; that BBT performed under the terms of the Notes by loaning funds to Maclay Construction; that Maclay Construction failed to pay the Notes according to their terms which resulted in a default on the respective mortgages and two foreclosures; and that BBT was damaged by Maclay Construction's failure to pay.[4] The Affidavit of BBT's Vice

---

[4] In the answer to the complaint, Defendants assert that BBT was not the holder of the loan documents and was not otherwise entitled to enforce the Notes. Defendants did not respond to the motion for summary judgment and therefore, did not present any evidence to support this statement or to create a genuine issue of material fact as to whether BBT has standing to enforce the Notes. BBT has now presented sufficient evidence that the FDIC was the successor to Colonial Bank's statutory right as a holder of the Notes, and transferred the Notes to BBT for the
(Continued)

President Ufen is sufficient evidence of Maclay Construction's failure to make the required payments. Ufen stated that "[t]he Company defaulted under the terms of the Notes by failing to pay the full amounts owed under Note 1, on the maturity date of August 11, 2009, and under Note 2, on the maturity date of October 22, 2009." (Doc. 21-1, p. 6 ¶13)

As to the amount due, Ufen stated that after applying the purchase price from the foreclosures, BBT was owed $217,628.46 as the balance due on Note 1 and $18,182.70 as the balance due on Note 2. (*Id.*, ¶ 17). In support, Ufen provided a copy of the account statement, which showed the debt owed at the time of foreclosure and affirmed that the debt amount was correct. (*Id.*, ¶ 18; 59-61 (Attachment 2 – Account Statement). *See Wells Fargo Bank, N.A. v. Vergos*, 2012 WL 206169, *2 (S.D. Ala. Jan. 24, 2012) ("Alabama law provides that the proffer of a copy of the note and affidavit testimony as to the amounts due under the note, as well as the defendant's failure to make the required payments, is sufficient to establish a plaintiff's case to recover a note.") (citing *Griffin v. American Bank*, 628 So.2d 540, 543 (Ala. 1993) (affidavit submitted by bank president)). Accordingly, summary judgment is due to be granted in BBT's favor and judgment entered against Maclay Construction in the amount of $217,628.46 as to Note 1 and $ 18,182.70 as to Note 2, for a total amount of $241,952.75 as of February 9, 2016.

**C. Breach of Guarantees**

"Every suit on a guaranty agreement requires proof of the existence of the guaranty

---

purpose of enforcement of the Notes. *See Branch Banking and Trust Company v. Imagine CBQ, LLC*, 2012 WL 1252582, *4 (S.D. Ala. April 13, 2012) (finding that the Purchase and Assumption Agreement between the FDIC and BBT and the Assignment from the FDIC to BBT were sufficient evidence to establish that BBT had standing to sue to enforce the Notes and Guarantees at issue).

contract, default on the underlying contract by the debtor, and nonpayment of the amount due from the guarantor under the terms of the guaranty." *Delro Industries, Inc. v. Evans*, 514 So.2d 976, 979 (Ala.1987); *see also Branch Banking & Trust Co. v. Bynum*, 2013 WL 4874322, at *3 (N.D. Ala. Sept. 12, 2013) ("Because a guaranty agreement is a contract, the elements for a breach of guaranty claim are the same as those for a breach of contract claim.").

By their terms, the Guarantees are continuing. Generally "to recover under a ... continuing guaranty, an additional element, notice to the guarantor of the debtor's default, must be proved", *Delro Industries,* 514 So.2d at 979, unless the guarantor has waived this notice requirement through the terms of the guaranty. *RBC Bank v. CMI Electronics, Inc*., Slip Copy, 2010 WL 2719096, *2 (M.D. Ala. Jul. 8, 2010) (providing that "[i]n the case of a continuing guaranty, it is also necessary to prove that the guarantor received notice of the debtor's default, unless that right has been waived by the terms of the guaranty contract.").

In that regard, "[t]he language of the guaranty is controlling in determining whether the holder of the guaranty is under a duty to notify the guarantor of a default by the principal, and notice need not be given when the terms of the guaranty expressly dispense with the need for it." *Sharer v. Bend Millwork Systems, Inc*., 600 So.2d 223, 226 (Ala.1992) (applying the rule to a continuing guaranty); *Branch Banking & Trust Co. v. Broaderip,* 2011 WL 3511774, at *4 (S.D. Ala. Aug. 11, 2011) (same). The Guarantees contain an express waiver of the right to receive "all notices hereunder[.]" (Doc. 21-1, p. 27, 29) Therefore, based on the terms of the Guarantees, Maclay has waived his right to receive notice and BBT need not provide proof of notice.

As to the first element, BBT argues that Maclay executed the continuing Guarantees and agreed to the terms. The uncontroverted evidence, the sworn statement of BBT's Vice President

Ufen, shows that the Guarantees exist. (Doc. 21-1, p. 4, Ufen Affidavit, ¶ 8; ¶ 9) Maclay does not dispute the existence of the Guarantees. Therefore, the first element is met.

As to the second element, BBT argues that Maclay Construction has defaulted under the terms of the underlying contracts, specifically Notes 1 and 2. In support, BBT cites Ufen's Affidavit, which states as follows:

> 13. The Company defaulted under the terms of the Notes by failing to pay the full amounts owed under Note 1, on the maturity date of August 11, 2009, and under Note 2, on the maturity date of October 22, 2009.

Doc. 21-1, p. 6 ¶13). The uncontroverted evidence, Ufen's sworn statement, shows that Maclay Construction defaulted on the terms of the underlying contracts by failing to make payments when due. Maclay does not dispute that Maclay Construction has not paid the balance due on the Notes. Therefore, the second element is met.

As to the third element, BBT argues that Maclay failed to pay the debts of Maclay Construction. In support, BBT again cites to Ufen's Affidavit at Paragraph 13, which states that "[b]y failing to fully and promptly pay the debts of Construction as required under the Guarantees, *Defendant Construction* breached the terms of the Guarantees. (Exhibit A at ¶ 13)." (Doc. 21, p. 11) (emphasis added) Reading the sentence in context, use of the phrase "Defendant Construction" is apparently an error and BBT meant "Defendant Maclay" had breached the terms of the Guarantees. Defendant Maclay did not respond to the motion for summary judgment and therefore, did not dispute that he did not pay BBT according to the terms of the Guarantees. Also, the Court notes that Maclay admitted in his answer that he "breached the terms of … the guarantees by failing to pay the full amount due on the maturity date." (Doc. 9, p. 9, ¶ 37; p. 10, ¶ 42) Accordingly, summary judgment is due to be granted in BBT's favor and judgment entered against Maclay in the amount of $217,628.46 as to Note 1 and $ 18,182.70

as to Note 2, for a total amount of $241,952.75 as of February 9, 2016.

**D. BBT's Claim for Attorney Fees and expenses.**

BBT argues that according to the terms of the Notes and Guarantees, Maclay Construction and Maclay agreed to pay all costs of collection including a reasonable attorneys fee. BBT argues that costs in the amount of $948.54 and a reasonable attorney fees in the amount of $5,136.05 have been incurred, for a total amount of $6,084.59. BBT relies upon the Affidavit of it counsel, Patrick L.W. Sefton, as to the work performed, time expended, and hourly rates for the attorneys, and an itemization of the costs incurred. (Doc. 21-2)

Under Alabama law, the courts follow "the American rule, whereby attorney fees may be recovered if they are provided for by statute or by contract" or "special equity". *Jones v. Regions Bank*, 25 So.3d 427, 441 (Ala. 2009) (citations omitted); *Hartford Acc. & Indem. Co. v. Cochran Plastering Co., Inc.*, 935 So.2d 462, 472 (Ala. Civ. App. 2006) (citations omitted) (same); *see also In re Martinez,* 416 F.3d 1286, 1288 (11th Cir. 2005) ("Generally, in federal litigation, ... a prevailing litigant may not collect an attorney's fee from his opponent unless authorized by either a federal statute or an enforceable contract between the parties."). Also, a contract provision for attorneys' fees is "susceptible to breach." *Army Aviation Center Federal Credit Union v. Poston*, 460 So.2d 139, 141 (Ala.1984); *see Ierna v. Arthur Murray Int'l, Inc.*, 833 F.2d 1472, 1476 (11th Cir.1987) ("When the parties contractually provide for attorneys' fees, the award is an integral part of the merits of the case."). In making the Notes, Maclay Construction agreed that "[i]f legal proceedings are instituted to enforce the terms of this Note," it would "pay all costs of the Lender in connection therewith, including reasonable attorney fees." (Doc. 21-1, p. 16, 18)  In making the Guarantees, Maclay agreed to "pay all Beneficiary's costs incurred to enforce this Guarantee, including reasonable attorney fees." (*Id.*, p. 27, 29)

Based on the express terms of the Notes and Guarantees, the Court finds that BBT is entitled to its costs and reasonable attorney fees.

In that regard, "[t]he determination of whether an attorney fee is reasonable is within the sound discretion of the trial court." *Kiker v. Probate Court of Mobile County,* 67 So.3d 865, 867 (Ala. 2010) (citations omitted). Generally, the courts begin with the lodestar analysis: A determination of the reasonable hourly rate multiplied by the hours reasonably expended." *Bivins v. Wrap It Up, Inc.*, 548 F.3d 1348, 1350 (11th Cir. 2008); *Norman v. Housing Authority of City of Montgomery*, 836 F. 2d 1292, 1303 (11th Cir. 1988). When making this determination, the district court may consider the twelve factors[5] identified in *Pharmacia Corp. v. McGowan*, 915 So.2d 549, 552–53 (Ala. 2004) (quoting *Van Schaack v. AmSouth Bank, N.A.*, 530 So. 2d 740, 749 (Ala. 1988)); *cf. Bivins*, 548 F. 3d at 1350 (addressing the twelve factors[6] from *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714, 717-719 (5th Cir.1974)). "The product of these two figures is the lodestar and there is a strong presumption that the lodestar is the reasonable sum the attorneys deserve." *Bivins*, 548 F.3d at 1350 (internal citations and quotation omitted).

---

[5] "(1) [T]he nature and value of the subject matter of the employment; (2) the learning, skill, and labor requisite to its proper discharge; (3) the time consumed; (4) the professional experience and reputation of the attorney; (5) the weight of his responsibilities; (6) the measure of success achieved; (7) the reasonable expenses incurred; (8) whether a fee is fixed or contingent; (9) the nature and length of a professional relationship; (10) the fee customarily charged in the locality for similar legal services; (11) the likelihood that a particular employment may preclude other employment; and (12) the time limitations imposed by the client or by the circumstances." *Pharmacia Corp.,* 915 So.2d at 552–53.

[6] "Those factors are: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases." *Bivins*, 548 F. 3d at 1350 (quoting *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714, 717-719 (5th Cir.1974)).

Once the lodestar is calculated, the use of some of these factors may continue when the district court considers whether to adjust the lodestar. *Association of Disabled Americans v. Neptune Designs, Inc.*, 469 F.3d 1357, 1359 (11th Cir. 2006) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 434 n.9, 103 S.Ct. 1933, 1940 n. 9 (1983)) (noting that the district courts may consider the twelve factors outlined in *Johnson*, but that "many of these factors usually are subsumed within the initial calculation of hours reasonably expended at a reasonable hourly rate."); *Bivins*, 548 F.3d at 1352 (finding that the "*Johnson* factors are to be considered in determining the lodestar figure" but "should not be reconsidered in making either an upward or downward adjustment to the lodestar—doing so amounts to double-counting.")

Additionally, the Court may utilize its own "knowledge and expertise" to determine the reasonableness of requested attorney's fees. *Loranger v. Stierheim*, 10 F.3d 776, 781 (11th Cir. 1994). Overall, the movant bears the burden of establishing the "reasonableness" of the attorney's fees by providing specific evidence to support the hours and rates claimed. *American Civil Liberties Union of Ga. v. Barnes*, 168 F.3d 423, 427 (11th Cir. 1999); *Taylor Newman Cabinetry, Inc. v. Classic Soft Trim, Inc.*, 436 Fed. Appx. 888, 895 (11th Cir. 2011).

In regard to the work performed, Seldon states that his firm reviewed the loan documents, investigated the factual background, sent demand letters to Maclay Construction and Maclay, filed the complaint, obtained service, continued to correspond with BBT, discussed the potential for settlement, prepared the Rule 26(f) report, prepared and sent interrogatories and requests for production, and prepared the summary judgment motion and brief. (Doc. 21-2)

As to the time expended and the hourly rates, Seldon states that he billed for 25.40 hours at an hourly rate of $200.00. He also states that he has practiced since 1996 and that $200.00 per hour is within the range of rates charged by lawyers of similar experience. Seldon also states

that Brett Hargett, an attorney with seven years of experience, billed for 0.70 hours at an hourly rate of $170.00 per hour, and that his hourly rate is within the range charged by lawyers of similar experience.  Seldon asserts that based upon his experience the fees and expenses sought are reasonable in light of the work necessary to prosecute the case, that the fees represent less than 3% of the balance owed on the loans, and that this matter has been handled as efficiently as possible.  (Doc. 21-2)

Upon consideration of BBT's submission, the relevant factors, and review of the Court's docket, the Court finds that the work performed and the hours expended are reasonable under the circumstances.  As BBT stated and as the docket confirms, this has been a straightforward enforcement of a debt due with limited motion practice and without extensive or contested discovery.

The Court further finds that the hourly rates are reasonable in that they are comparable to "the prevailing market rate in the legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." *Blum v. Stenson*, 465 U.S. 886, 895–896 n. 11, 104 S.Ct. 1541 (1984); *Norman v. Housing Authority of the City of Montgomery*, 836 F.2d 1292, 1299 (11th Cir. 1988); *American Civil Liberties Union of Ga. v. Barnes*, 168 F.3d 423, 437 (11th Cir.1999) (The "relevant market" is the "place where the case is filed."); *Branch Banking and Trust Co. v. Imagine CBQ, LLC,* 2012 WL 1987830, *2 (S.D. Ala. June 4, 2012) (finding that $200.00 per hour was a reasonable hourly rate for an attorney with fourteen years of experience and that $170.00 was a reasonable hourly rate for an attorney with five years of experience).

As to costs and expenses, Seldon states that BBT incurred expenses for postage, copies, Federal Express, service of process, computerized research, investigation, and court costs.   He also asserts that the expenses incurred were reasonable in light of the work necessary to prosecute the case.  (Doc. 21-2)   In making the Notes, Maclay Construction agreed that "[i]f

legal proceedings are instituted to enforce the terms of this Note," it would "pay all costs of the Lender in connection therewith[.]" (Doc. 21-1, p. 16, 18)  In making the Guarantees, Maclay agreed to "pay all Beneficiary's costs incurred to enforce this Guarantee[.]" (*Id*., p. 27, 29)

Upon consideration of the terms of the Notes and Guarantees, the Court finds that BBT is entitled to recover the costs and expenses as requested. *See Peppertree Apartments LTD v Peppertree Apartments*, 631 So.2d 873, 878 (Ala. 1993) (providing that "[t]he intention of the parties controls when a court construes the terms of a promissory note, and that intention is to be derived from the provisions of the contract, if the language is plain and unambiguous[ ]"). Additionally, Sefton's Affidavit sufficiently supports a finding that the collection costs and expenses incurred are reasonable.   Accordingly, BBT is granted the amount of $948.54, for the reasonable costs and expenses of collection.

As previously stated, in making the Guarantees, Maclay guaranteed payment of "all other debts, obligations, and liabilities of every kind and description, whether now owing or hereafter arising out of credit  … granted by the Beneficiary [(BBT)] to" Maclay Construction and also agreed to "pay all Beneficiary's [(BBT's)] costs incurred to enforce this Guarantee, including reasonable attorney fees." (*Id*., p. 27, 29) (bracketed text added)  Thus, by the terms of the Guarantee, Maclay is liable for all reasonable attorney fees, expenses and costs incurred in enforcement of the Notes and the Guarantees.

However, in making the Notes, Maclay Construction agreed that "[i]f legal proceedings are instituted to enforce the terms of this Note," it would "pay all costs of the Lender in connection therewith, including reasonable attorney fees." (Doc. 21-1, p. 16, 18)  The terms of the Notes do not indicate that Maclay Construction agreed to pay any attorney fees, costs or expenses arising from BBT's efforts to recover from Maclay on the Guarantees. *See Synovus*

*Bank v. M/V ACCU V,* 2012 WL 4760780, *2 (S.D. Ala. Oct. 4, 2012) ("By this language, Accumarine agreed to pay reasonable attorney's fees arising from the plaintiff's efforts to recover from Accumarine but not such fees associated with the plaintiff's efforts to recover from the various guarantors. Accordingly the plaintiff will not be awarded attorney's fess and expenses incurred in connection with its efforts to recover from the guarantors.")

Since Sefton did not delineate which hours of work were expended or the costs and expenses incurred for collection of the Notes as opposed to the Guarantees, the Court is unable to determine the attorney fees, costs and expenses for which Maclay Construction is liable. Accordingly, **BBT shall, on or before April 4, 2016, supplement its submission** with sufficient evidence to establish the work expended, costs, and expenses related to enforcement of the Notes.

### IV.     Conclusion

Upon consideration, and for the reasons set forth herein, the Court finds that there is no genuine dispute of material fact and that BBT is entitled to judgment as a matter of law regarding Maclay Construction's breach of the Notes and Maclay's breach of the Guarantees. Accordingly, BBT's motion for summary judgment is GRANTED.

Final judgment shall issue by separate document as provided in Rule 58(a) of the Federal Rules of Civil Procedure upon resolution of the attorney fees, costs and expenses incurred in regard to enforcement of the Notes.

**DONE** and **ORDERED** this the 21st day of March 2016.

>   /s/ Kristi K. DuBose
>   **KRISTI K. DuBOSE**
>   **UNITED STATES DISTRICT JUDGE**